UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20079-TP-MOORE/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TOMAS RODRIGUEZ,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON PETITION
FOR REVOCATION OF SUPERVISED RELEASE**

This matter is before the Court on the United States' Petition for Revocation of Supervised Release ("Petition"). [D.E. 6].[1] The government alleges that Defendant Tomas Rodriguez ("Defendant") violated conditions of his Supervised Release and requests that his term of Supervised Release be revoked. An evidentiary hearing was held on this matter on September 9, 2011. Having carefully considered the government's Petition, the testimony of the witnesses and the exhibits admitted into evidence at the hearing, and the oral arguments of counsel, and being fully advised in the premises, the Court finds that Defendant did violate conditions of Supervised Release and, accordingly, recommends that the Petition be Granted and that Defendant's term of Supervised Release be revoked, for the reasons forth below.

---

[1] The Honorable K. Michael Moore referred this matter to the undersigned Magistrate Judge. [D.E. 13].

## I.   FACTUAL FINDINGS[2]

### A.   *Procedural Background*

Defendant was indicted in the Northern District of Illinois on one (1) count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1).  [D.E. 1 at 8].  He pled guilty to that crime on January 30, 2006 and was sentenced to sixty-three (63) months' imprisonment followed by a five (5) year term of supervised release.  [*Id*. at 2-7; *see also* Government Exhibit ("Govt. Ex.") 1].  Defendant was released from prison and began serving his term of supervised release in August 2008.  [D.E. 6 (Petition of Violation of Supervised Release ("Petition") at 1)].  Jurisdiction over Defendant's supervised release was transferred to the Southern District of Florida in early 2009.  [D.E. 1 at 1].  United States Probation Officer ("PO") Lynell Fahie began supervising Defendant in March 2010.

On June 28, 2011, PO Fahie prepared the Petition alleging that Defendant had violated the following conditions of supervised release imposed by the sentencing court:

> 1) the defendant shall not commit another federal, state or local crime;
>
> 2) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment; and
>
> 3) the defendant . . . shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

[Govt. Ex. 1 at 3; D.E. 6 at 1-2].  More specifically, the Petition alleged that Defendant violated these three conditions by (1) committing the crime of identity theft; (2) failing

---

[2] These findings are based on the testamentary and documentary evidence adduced at the September 9, 2011 hearing as well as filings in the court docket.  The evidence is undisputed, as noted herein.

to notify the Probation Office that he had been hired in December 2009 by 1-800-WeAnswer; and (3) associating with Riyadh Mohammed Nagi ("Nagi"), a convicted felon, without the probation officer's permission. [D.E. 6 at 1-2].

### B. *Factual Background*

Defendant was advised of the conditions that governed his supervised release on at least four occasions: April 4, 2008, June 10, 2008, January 21, 2010, and April 22, 2011. *See* Govt. Ex. 1 at 4. The last notification occurred during a meeting that PO Fahie had with Defendant on April 22, 2011, the purpose of which was to discuss his alleged violation of some of the conditions of release.

PO Fahie had learned approximately eight (8) months earlier (in August 2010) that Defendant had been seen with Nagi inside a Dunkin' Donuts in Miami, Florida, a violation of the condition that he not associate with a convicted felon without permission. This information was related to PO Fahie by Nagi's probation officer, PO John E. Minelli, who also advised that Nagi was the target of an on-going federal criminal investigation involving identity theft.

As part of that investigation, law enforcement officers conducted surveillance of Nagi. It was during one such surveillance, on June 28, 2010, that Broward County Sheriff's Office Detective ("Det.") Michael Kennedy observed Defendant and Nagi with a laptop computer seated together inside the Dunkin' Donuts in Miami.

A few days earlier, on June 24, 2010, Det. Kennedy conducted a trash pull at Nagi's residence. He found several QVC shopping packing slips and a UPS delivery notice with the name "Bernard Greenberg" on them. Det. Kennedy later determined

who this individual was and met Mr. Greenberg at his Lauderhill residence. According to Mr. Greenberg, an elderly man, and his wife, neither owned a computer; they had never ordered items online from QVC or any other merchant; and Mr. Greenberg had never applied for a QVC charge account nor did he authorize anyone to open such an account in his name. Nonetheless, a QVC account was opened in his name in May 2010. Merchandise in the amount of $ 1,000 - $ 2,000 was ordered from QVC and charged to Mr. Greenberg's account on June 3 and 20, 2010. These items were shipped to an address different from Mr. Greenberg's residence. *See* Govt. Ex. 2A & 2B.

Det. Kennedy arrested Nagi on September 17, 2010 for suspected identity theft. Nagi waived his *Miranda* rights and told officers that Defendant had supplied him with the names, addresses, dates of birth, and social security numbers of random individuals whose personal information he had access to through his job at a medical billing office; that he (Nagi) would go to Dunkin' Donut stores because they had free Wi-Fi and, using his laptop computer, attempt to open charge accounts using other individuals' identities; that he had only been successful in opening a QVC account under Mr. Greenberg's name, having been turned down on numerous other attempts using other people's identities; and that he had received pocketbooks, a computer, printer, and DVD player (items listed on the QVC bill in Mr. Greenberg's name). According to Nagi, he profited from the first shipment of merchandise but if things started rolling along, he would cut in Defendant.

A day after his arrest, Nagi reported to PO Minelli's office and provided an unsworn, signed handwritten statement implicating himself and Defendant in the

commission of identity theft. *See* Govt. Ex. 3A. In the statement, Nagi described how upon moving to South Florida he knew only two people in the area, one of whom was Defendant whom Nagi knew from a federal prison camp in Pensacola. Nagi also repeated his post-arrest statements about Defendant working for a medical billing company with access to personal identity information and how together they used the identity information provided by Defendant to open a QVC charge card, then order and later receive a printer, laptop, DVD player, and a purse.[3]

FBI Special Agent John Anderson determined who Defendant's employer was (1-800-WeAnswer) and met with the company's manager and Defendant's then-supervisor, Olga Sardinas ("Sardinas"). Ms. Sardinas stated that Defendant was hired on December 9, 2009 by 1-800-WeAnswer, a call center company that handled medical-related calls. He was terminated after Ms. Sardinas discovered that he had provided inaccurate information about his criminal past on his employment application. In response to the question, "Have you ever been convicted of a crime? (Felony or misdemeanor)", Defendant wrote "N/A," then left the space following the statement, "If so, please explain in detail." blank, notwithstanding his conviction for which he was then on supervised release. *See* Govt. Ex. 4A at 2.

As an agent at 1-800-WeAnswer, Defendant answered phone calls from hospitals seeking to verify the eligibility of patients for health insurance coverage. Defendant

---

[3] Nagi's supervised release was revoked in October 2010 following his admission of guilt to associating with a convicted felon (Defendant) without permission and leaving the district without permission. Nagi pled nolo contendere to a violation of the condition that he not break the law (the basis of which was identity theft). *See* Govt. Ex. 3B.

would log into the correct health care plan's database, retrieve a patient's information, then verify the patient's eligibility and create an authorization number for the particular service requested. In the process, Defendant would have access to the patient's name, address, date of birth, social security number, and certain health information.

Ms. Sardinas testified that Defendant accessed Bernard Greenberg's personal identity information on March 31, 2010. She described in detail how 1-800-WeAnswer tracked its employees' hours and could determine what personal identity information an employee had access to during the course of his or her shift.

According to Ms. Sardinas, each agent at 1-800-WeAnswer clocked in and out of work using the company's biometric time clock which required the agent's assigned four-digit I.D. number and his or her hand print. A time card report generated for Defendant reflected the hours he worked on March 31, 2010: he clocked in at 4:30 p.m., clocked out on break at 9:31 p.m., clocked back in at 10:00 p.m., then clocked out at the end of his shift at 12:40 a.m. *See* Govt. Ex. 4B at 1. It would be impossible for someone other than Defendant to clock in or out using his information.

Documentation maintained for the particular health care plan of which Bernard Greenberg was a member, Preferred Care Partners, reflects that Defendant received a call about this individual and accessed his member information at 11:30 p.m. on March 31, 2010. *See* Govt. Ex. 4D.[4] Notes prepared by Defendant at the end of his

---

[4] Defendant was the only employee at 1-800-WeAnswer with the initials "TR" so those particular initials on company documents indicate that Defendant worked on the matter.

shift that day corroborate that he accessed Mr. Greenberg's information in the Preferred Care Partners' database on that date. *See* Govt. Ex. 4E. In so doing, Defendant saw Mr. Greenberg's name, address, phone number, date of birth, gender, insurance information, and social security number. *See* Govt. Ex. 4C.

Ms. Sardinas testified that no one but Defendant accessed Bernard Greenberg's information on March 31, 2010. She explained that different login information was required to access the different health plans' database systems utilized by her company. Thus, an agent such as Defendant would be assigned a password for each particular health insurance carrier in order to gain access to the data in that carrier's system. In particular, the database for Preferred Care Partners required a different password for each agent and the information was not posted on the wall in the 1-800-WeAnswer office nor was it available to the company's employees at large. She also stated that the Preferred Care Partners' system allowed only one agent at a time to be logged into the system.

Marie Gutierrez is a former agent and coworker of Defendant's at 1-800-WeAnswer. She testified that she did not have her own login information with which to access the different health plan's databases. Instead, she used login information from a list that was posted on the wall in the office and available to anyone using the computer. That list, she stated, included Defendant's name and login information. However, because Ms. Gutierrez did not know which particular health plan system Defendant's posted login information related to, she did not contradict Ms. Sardinas'

unequivocal testimony that only Defendant could use his login information to access the Preferred Care Partners' database.

PO Fahie testified that one of the conditions of Defendant's release was that he report *any* change in his employment status, including starting a second job, to the Probation Office. In December 2009, Defendant reportedly was employed by Premier Communication. Therefore, when PO Fahie learned that Defendant had been working for 1-800-WeAnswer, she reviewed the following records to determine whether he had reported this additional employment to the Probation Office.

She examined Defendant's monthly supervision reports covering the period of his employment with 1-800-WeAnswer. Each monthly report contains a box in which an offender is to indicate if he is employed and another box to indicate if he has changed employment. None of Defendant's reports reflected his employment at 1-800-WeAnswer or that he had experienced any change in his employment status in December 2009 or thereafter.

PO Fahie also reviewed the Probation Office's interactive voice recognition system which allowed Defendant to report telephonically. The system prompts an offender to answer questions such as whether he had experienced any change in employment. There was no indication in the voice recognition system that Defendant reported employment at 1-800-WeAnswer.

Finally, PO Fahie checked a database the Probation Office uses that reflects employment by offenders and previous "chronos" prepared by Defendant's prior

probation officers but again, she found no indication that Defendant was working at 1-800-WeAnswer or of any other change in his employment status.

When PO Fahie asked Defendant during the meeting on April 22, 2011 whether he had access to personal information at work that could be used to commit fraudulent offenses, he denied having such access.

## II.   ANALYSIS

### A.   *Applicable Standard*

As previously noted, the government seeks to revoke Defendant's supervised release based on his alleged violation of three of the conditions of supervised release. A court may revoke a defendant's term of supervised release if it finds "by a preponderance of the evidence" that he violated a condition of supervised release. *See* 18 U.S.C. § 3583(e)(3). The reasons for revoking supervised release and the evidence the court relies upon should be either formalized in written findings or orally announced and recorded or transcribed. *See United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994).

As a preliminary matter, we note that it is undisputed that Defendant had ample notice of the conditions governing his supervised release. He was advised of these conditions on at least four different occasions between April 2008 and April 2011, including on January 21, 2010, one and half months after he was hired by 1-800-WeAnswer and three months before he accessed Bernard Greenberg's identity information. The question for our determination is whether the government has

proven by a preponderance of the evidence that Defendant violated any of the specific conditions of supervised release identified in the Petition.

### B. *Commission of Another Crime*

The government alleges that Defendant violated the condition of supervised release prohibiting him from committing another crime, i.e., identity theft. The government asserts that Defendant violated 18 U.S.C. § 1028(a)(7), which makes it a crime to

> knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law[.]

18 U.S.C. § 1028(a)(7). We find that the government has proven by a preponderance of the evidence that Defendant violated this statute.

The undisputed evidence is that Defendant accessed Bernard Greenberg's identity information on March 31, 2010 through his job at 1-800-WeAnswer (a position procured through deception). Defendant thus obtained Mr. Greenberg's name, address, phone number, date of birth, and social security number. In May 2010, a QVC credit card account was opened in Bernard Greenberg's name by someone other than Mr. Greenberg. In early to mid June 2010, someone other than Mr. Greenberg made unauthorized charges to his QVC account. Within a few weeks, on June 24, 2010, QVC packaging materials bearing Mr. Greenberg's name were discovered in Nagi's trash. Four days later, on June 28, 2010, Defendant and Nagi (and his laptop computer) were observed together inside Dunkin' Donuts.

The evidence that Defendant committed or aided and abetted in the commission of identity theft is only circumstantial. But when considered as a whole, particularly when the events are placed in chronological order, we find it more probable than not that Defendant gave Bernard Greenberg's personal identity information to Nagi, with the knowledge and intent that together they or Nagi alone would use that information to fraudulently open a charge account in Mr. Greenberg's name which would be (and was) used to purchase merchandise without Mr. Greenberg's authorization. *See, e.g., United States v. DeAngelis*, 206 Fed. Appx. 873, 879 (11th Cir. 2006) (affirming conviction for identity theft; circumstantial evidence that the defendant had access to the victim's identity documents through a co-conspirator, and the existence of accounts in the victim's name for cable, television, and power at the *defendant's* residence, supported the finding that the defendant had access to the victim's identification to open the accounts).

Based on the foregoing, we find that the government met its burden of proving by a preponderance that Defendant violated 18 U.S.C. § 1028(a)(7). We conclude that Defendant's violation of the condition of supervised release that he not commit any additional crimes supports a revocation of his supervised release or other appropriate relief.

### C. *Change in Employment*

The government also alleges that Defendant violated the condition of supervised release requiring him to notify his probation officer at least ten days prior to any change in employment. The evidence is undisputed that Defendant failed to report his

employment with 1-800-WeAnswer to the Probation Office. Although he was hired by the company in December 2009 and PO Fahie's supervision did not begin until March 2010, she methodically reviewed all relevant records and found no reference whatsoever to his employment with 1-800-WeAnswer.

We reject Defendant's suggestion that obtaining *additional* employment is not a change in employment that triggers the reporting requirement. The reporting requirement is not ambiguous; it is not limited to the first job an offender obtains. Defendant was required to report *any* change in his employment circumstances, and that clearly encompasses starting a second job. Yet never once in the months that Defendant worked for 1-800-WeAnswer did he mention the new job to anyone in the Probation Office.[5]

Defendant lied about his criminal background on the employment application for 1-800-WeAnswer, and thereby obtained a job giving him access to highly sensitive information about people. These facts lend additional support to the government's argument that Defendant intentionally failed to report this job, not because he misunderstood the reporting requirement as Defendant has suggested.

We find that the government has proven this violation by a preponderance of the evidence and conclude that it supports a revocation of Defendant's supervised release.

---

[5] The record is unclear how long Defendant worked for 1-800-WeAnswer but it was at least six (6) months. Defendant was hired on December 9, 2009 and continued working there for some period of time after June 28, 2010, the date he was spotted with Nagi at the Dunkin' Donuts in Miami. At some point after June 28th, agents discovered Defendant's identity and his employment at 1-800-WeAnswer, and informed Ms. Sardinas of his criminal past, after which he was fired for submitting the fraudulent employment application.

### D.     *Association with A Convicted Felon*

Finally, the government alleges that Defendant violated the condition of supervised release prohibiting him from associating with a convicted felon without his probation officer's permission. Defendant's presence with Riyadh Mohammed Nagi, a convicted felon, in a Dunkin' Donuts in Miami on June 28, 2010, is not disputed. Nor is it disputed that Defendant did not request nor did he receive permission to associate with Ragi from PO Fahie. Accordingly, we conclude that the government has proven this violation which, like the other violations, supports a revocation of Defendant's supervised release.

### III.     CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge hereby **RECOMMENDS** that the Government's Petition for Revocation of Supervised Release. [D.E. 6] be **GRANTED** and that Defendant Tomas Rodriguez's Term of Supervised Release be **REVOKED** based on the undersigned's findings that the government proved each of the three violations alleged in the Petition.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144,

...

1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 28th day of September, 2011.

                                           /s/ *Edwin G. Torres*
                                           EDWIN G. TORRES
                                           United States Magistrate Judge